UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SOUTHERN GARDENS CITRUS
PROCESSING CORPORATION,

    Plaintiff,

v.                                                Case No.:   2:22-cv-22-SPC-NPM

SOUTHERN-OWNERS
INSURANCE COMPANY,

    Defendant/Third-Party
    Plaintiff

v.

DOUGLAS LANGLEY,

    Third-Party Defendant.
                                     /

## **OPINION AND ORDER**[1]

Several years ago, Charley Gunter was injured at a citrus processing plant owned and operated by Southern Gardens Citrus Processing Corporation ("Southern Gardens"), Plaintiff. After Southern-Owners Insurance Company ("SOIC"), Defendant, refused to defend and indemnify Southern Gardens in Gunter's personal injury suit, Southern Gardens funded its own defense and

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

settled with Gunter for $300,000. But who should ultimately be responsible for that sum?

Southern Gardens has sued SOIC for breach of contract (Doc. 1). And SOIC has filed a third-party complaint against Douglas Langley, a Southern Gardens employee, for common law indemnity, equitable subrogation, and contractual subrogation. (Doc. 39). SOIC argues that, should it have to indemnify Southern Gardens, it would be subrogated to the rights of Southern Gardens and entitled to recovery against Langley for Gunter's injuries. In the motion before the Court, Langley asks the Court to dismiss SOIC's third-party complaint (Doc. 46). The Court is fully briefed (Doc. 50; Doc. 63), and it grants Langley's motion in part.

## BACKGROUND

Richbyrd Gunter Industrial, LLC ("RGI") contracted with SOIC for a commercial general liability insurance policy ("Policy"). RGI was engaged to replace certain electrical lines during a construction project at Southern Gardens' facility, including removing the power feed to the boiler room. While on site to perform the electrical work, Gunter was injured by an explosion in Southern Gardens' electrical vault.

In his personal injury suit ("Gunter action"),[2] Gunter alleged Langley's negligent failure to shut down the power to the electrical vault caused the explosion. And he alleged Southern Gardens actively participated in the construction project and—through Langley—controlled the means and methods by which that construction project was being performed.

Southern Gardens alleges that its contract with RGI required Southern Gardens to be named as an additional insured on RGI's Policy with SOIC, and that Southern Gardens was issued a certificate of insurance naming its parent corporation as an additional insured on the Policy. But SOIC disputed that Southern Gardens was an additional insured, and it refused to defend or indemnify Southern Gardens in the Gunter action.

After Southern Gardens funded its own defense and settled with Gunter, it sued SOIC for breach of RGI's insurance contract. SOIC then filed the third-party complaint at issue. Contingent on a determination that SOIC owed a defense and indemnity to Southern Gardens, SOIC seeks indemnification and subrogation from Langley.

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or

---

[2] Gunter sued Southern Gardens and Langley in the Circuit Court of the 20th Judicial Circuit in and for Hendry County, Florida. (Doc. 1-2).

referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Id.* But conclusory allegations are not presumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, "the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). And courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## DISCUSSION

Each of SOIC's three counts are brought on a contingent basis and under the premise that, should it be determined that SOIC owes a defense and

indemnity to Southern Gardens, SOIC may stand in Southern Gardens' shoes and pursue relief against Langley. (Doc. 39 ¶¶ 27, 28, 37, 49, 60). SOIC argues the Policy[3] establishes its subrogation rights:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Doc. 39 ¶ 58; Doc. 43-1 at 38). In its response to Langley's motion, SOIC reiterates that its causes of action are not brought directly, but as subrogee standing in Southern Gardens' shoes. (Doc. 50 at 5–8).

In its reply, Langley indicates he did not appreciate that SOIC's claims were all brought under SOIC's contractual subrogation rights, with SOIC standing in Southern Gardens' shoes. (Doc. 63 at 3). Langley's reply recalibrates and raises new and different arguments from those in his motion to dismiss.[4]

---

[3] Although SOIC's third-party complaint quotes this language, SOIC did not attach a copy of the Policy to its third-party complaint. Ordinarily, a court analyzing a motion to dismiss considers nothing beyond the complaint and any document attached to it; the exception to this rule is "cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citations omitted). SOIC quotes the Policy, it is central to its claims, the contents of the Policy are not in dispute, and the Policy and Langley's motion to dismiss were filed with the Court on the same day—albeit by Southern Gardens through the counsel it shares with Langley. (Doc. 43; Doc. 43-1). Circumstances are not as tidy as they could (or should) be. Still, the Court will consider the Policy's provision on SOIC's subrogation rights.

[4] In his *motion*, Langley argues generally that because SOIC made no payment, its third-party complaint is premature and should be dismissed with prejudice. (Doc. 46 at 9). He

SOIC's third-party complaint did not express that SOIC's claims all derived from its contractual subrogation rights. And so, as a practical matter, it is understandable that Southern Gardens refined its arguments for dismissal once SOIC clarified its claims. But SOIC must explicitly state its claims are linked to the contractual language for those claims to proceed. The third-party complaint is therefore dismissed, and SOIC is directed to file an amended third-party complaint that rectifies this issue.

But to prevent duplication of effort, the Court will now address the arguments for dismissal set forth in Langley's reply.

## I. SOIC's Contingent Claims Are Not Premature.

Langley argues that because SOIC has not made a payment, its claims are premature, and the third-party complaint must be dismissed with prejudice. (Doc. 46 at 9). SOIC acknowledges no payment has been made, but it contends its contingent claims may proceed under both Florida and federal law.

---

then attacked each of SOIC's three claims as lacking essential elements: (1) the equitable subrogation claim fails because, among other reasons, SOIC has not paid the (entire) debt (Doc. 46 at 9–12); (2) the common law indemnity claim fails because there is no special relationship between SOIC and Langley (Doc. 46 at 12–15); and (3) the contractual subrogation claim fails both because SOIC has not paid the debt and because the claim's four-year statute of limitations has run (Doc. 46 at 15–19). Reframing SOIC's claims as raised by Southern Gardens' subrogee resolves most of these arguments. The exception is Langley's statute-of-limitations argument. But because a dismissal under Federal Rule of Civil Procedure 12(b)(6) based on a statute-of-limitations is appropriate only "if it is apparent from the face of the complaint that the claim is time-barred," the Court declines to dismiss on that basis. *See Owens-Benniefield v. BSI Fin. Servs.*, 806 F. App'x 853, 856 (11th Cir. 2020).

To begin, the right to subrogation arises after the subrogee pays an entire debt. *See e.g.*, *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). But several Florida district courts of appeal have held that contingent subrogation claims can be asserted before payment is made. *See Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 197–98 (Fla. 5th Dist. Ct. App. 2015); *Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams*, 769 So. 2d 484, 487–88 (Fla. 4th Dist. Ct. App. 2000); *Attys' Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc.*, 547 So. 2d 1250, 1251–53 (Fla. 2d Dist. Ct. App. 1989); *but see Nat'l Union Fire Ins. Co. v. Se. Bank, N.A.*, 476 So. 2d 766, 767 (Fla. 3d Dist. Ct. App. 1985) (upholding dismissal of insurers' third-party subrogation complaints on basis that "[a] right to subrogation does not arise until judgment is entered or payment has been made").

This aligns with Federal Rule of Civil Procedure 14, which permits a defendant to act as a third-party plaintiff and "serve a summons and complaint on a nonparty *who is or <u>may</u> be liable* to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1); *see also Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 429 F. Supp. 2d 1274, 1288–89 (M.D. Fla. 2005) (declining to dismiss insurer's contingent claims for subrogation and contribution). The Court concludes SOIC's contingent claims are not premature, and it declines to dismiss the third-party complaint on this ground.

## II. The Policy Language Establishes SOIC's Subrogation Rights.

Langley argues SOIC's alleged subrogation rights are speculative because the contractual language does not confer unilateral rights to step into Southern Gardens' shoes where SOIC has not made a payment. (Doc. 63 at 4). But the cases Langley cites supporting this argument are distinguishable. In those cases,[5] the courts could not determine that subrogation agreements existed.

Here the parties agree the Policy contains a subrogation provision: "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, *those rights are transferred to us*. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them." (Doc. 43-1 at 38). And this language establishes that SOIC has subrogation rights—the Eleventh Circuit has said as much. *See Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 662 F.3d 1328, 1331 (11th Cir. 2011) (analyzing identical policy language and stating, "The language of this provision on its face is clear—the insurer has subrogation rights.").

The Court declines to dismiss the third-party complaint on this ground.

---

[5] *Am. Coastal Ins. Co. v. Electrolux Home Prod., Inc.*, No. 2:19-CV-180-FTM-38MRM, 2019 WL 13247272, at *2 (M.D. Fla. July 26, 2019); and *Great Divide Ins. Co. v. First Fleet Truck Sales, Inc.*, No. 18-62838-CIV-SMITH, 2020 U.S. Dist. LEXIS 110781 at **8–9 (S.D. Fla. June. 23, 2020).

### III. Langley's Waiver and Relitigation Arguments Fail.

Langley argues SOIC's denial of coverage waives its alleged subrogation rights, and because SOIC repudiated coverage in the Gunter action, it cannot now use Policy language to obtain relief. (Doc. 63 at 6).

The flaw in Langley's argument is that Southern Gardens has asked the Court to find it is an insured under the Policy. Were this Court to find that Southern Gardens is an insured under the Policy and that SOIC breached that Policy by denying coverage to Southern Gardens, then SOIC would get *both* the benefit and the burden of the Court's decision. The burden: SOIC would have to pay Southern Gardens under the Policy; the benefit: SOIC would then have subrogation rights to pursue relief against Langley. The Court declines to dismiss the third-party complaint on this ground.

Langley also argues SOIC's third-party complaint should be dismissed because SOIC had an opportunity to defend Southern Gardens in the Gunter action but refused to do so and is now bound by the settlement of that action and may not now raise claims or defenses challenging Southern Gardens' liability. (Doc. 63 at 6–8).

But SOIC is not challenging the facts established in the settlement of the Gunter action. Southern Gardens' settlement of Gunter's claim was an acknowledgment of its vicarious liability for Langley's actions or failures to act. SOIC accepts the facts established by the settlement. But should it be

9

determined that Southern Gardens was an insured under the Policy, SOIC wants the ability to seek recovery from what it sees as the actual wrongdoer. The Court declines to dismiss the third-party complaint on this ground.

### IV. SOIC's Claims for Relief Are Sufficiently Alleged.

The bulk of Langley's Rule 12(b)(6) arguments center on SOIC's failure to pay Southern Gardens' debt and are based on the misapprehension that SOIC was bringing the claims on its behalf, rather than standing in the shoes of Southern Gardens. This matter clarified, SOIC's claims are sufficiently alleged.

To prevail on an indemnity claim under Florida common law, a party must show (1) it is blameless, and its liability is vicarious and solely for the wrong of another; (2) it seeks indemnification from the party at fault; and (3) a special relationship exists between the parties. *See Dade Cnty. Sch. Bd.*, 731 So. 2d at 642. SOIC has alleged Southern Gardens was not actively at fault for Gunter's injuries and it was only vicariously liable for Langley's acts; Southern Gardens may have indemnification from Langley; and Southern Gardens employed Langley, which constitutes a special relationship. (Doc. 39 at 6–8). These allegations are enough to state a claim for common law indemnity.

Equitable subrogation applies when (1) the subrogee paid off a debt to protect its own interest; (2) the subrogee did not act as a volunteer; (3) the

10

subrogee was not primarily liable for the debt; (4) the subrogee paid off the entire debt; and (5) subrogation would work no injustice to a third party's rights. *Dade Cnty. Sch. Bd.*, 731 So. 2d at 646. SOIC alleges Southern Gardens was liable to Gunter based on Southern Gardens' vicarious, constructive, derivative, or technical liability for Langley's failure to act or wrongful acts; Southern Gardens did not act as a volunteer in paying the amounts owed; Langley should have paid the costs of defending and settling the Gunter action because he was the active tortfeasor; and subrogation would work no injustice to a third party's rights. (Doc. 39 at 8–10). These allegations are enough to state a claim for equitable subrogation.

Contractual subrogation arises "from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor." *Dade Cnty. Sch. Bd.*, 731 So. 2d at 646. SOIC quotes the subrogation provision and alleges that if an insured has rights to recover all or part of a payment made by SOIC, then those rights are transferred to SOIC. (Doc. 39 at 10–11). These allegations are enough to state a claim for contractual subrogation.

## CONCLUSION

Once the nature of SOIC's contingent claims against Langley is understood, Langley's arguments for dismissal fail. SOIC's complaint adequately states claims for common law indemnification, equitable

11

subrogation, and contractual subrogation. But SOIC is directed to amend its complaint to make it abundantly clear that its contractual subrogation rights give rise to all its claims.

Accordingly, it is now

**ORDERED:**

(1) Third-Party Defendant Douglas Langley's Amended Motion to Dismiss (Doc. 46) is **GRANTED** to the extent that SOIC has not explicitly stated its claims are linked to the Policy's contractual language. Otherwise, the motion to dismiss is denied.

(2) SOIC's third-party complaint (Doc. 39) is **DISMISSED WITHOUT PREJUDICE**.

(3) SOIC is **DIRECTED** to file an amended third-party complaint that remedies the issues identified in this order by **June 23, 2023**.

(4) SOIC's Motion for Oral Argument (Doc. 51) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Fort Myers, Florida on June 9, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record